RAY R. HICKMAN, APPELLANT, v. DUNLOP TIRE & RUBBER COMPANY, ROYAL INDEMNITY COMPANY, RESPONDENTS.—185 S. W. (2d) 874.

Springfield Court of Appeals. February 15, 1945.

574

*Norman & Foulke* for appellant.

*Ray Bond* for respondents.

FULBRIGHT, J.—This proceeding was instituted February 5, 1941, by claimant, under the Workmen's Compensation Act, against Dunlop Tire & Rubber Co., employer and the Royal Indemnity Co., insurer, to recover compensation for injuries brought about by an accident or a series of accidents, sustained by claimant and which resulted in total permanent disability.

Employer and insurer filed their answer thereto denying in substance that the claimant's injury was the result of an accident or accidents arising out of and in the course of his employment. The answer further alleges that "the claimant cannot maintain his claim for compensation for the reason that the claimant did not give the employer written notice of the time, place and nature of the alleged injury or injuries within thirty days thereafter, as required by Section 3336, Revised Statutes Missouri, 1929, and the employer and insurer state that any claim for compensation of the claimant is barred by the provisions of Section 3337, Revised Statutes Missouri, 1929;" they further deny each and every allegation contained in the claim for compensation.

The claimant had been working for the employer four or five years and up until three or four months prior to the hearing before the Referee of the Workmen's Compensation Commission, April 11, 1941. About a year after he began working he noticed small growths or nodules appearing on his hands. These "were little pimples on the inner surface of my hands. . . . They looked like brown warts and sort of hard. . . . They did not cause any discomfort, and were not disabling and I continued doing my work. I did not know that any of the substances that I was using there were injurious to my hands or skin in any way and I continued working there after they appeared. I did not go to a doctor for a long time after I noticed them. The first time I saw a doctor about these was about a year and a half ago, approximately. I went to Dr. Moody. He gave me some salve to rub on them. He treated me and I continued to work.

". . . about a year and a half ago, one of these places broke into an open sore. One was on the second finger of my left hand and the other on the index finger of the left hand. Shortly after this, I went to Dr. Moody for treatment. He said that they were caused by something I was handling. This was in the summer or fall of 1939. He had continued to treat those fingers up to this time, and has for a long period of time given me an ointment to apply on those fingers. I am not able to pronounce its name. I applied it on my finger and then taped a bandage around it. I worked with my finger in a bandage until I quit. It was not so bad a year and a half ago. There were occasions when I had a bandage on both the first and second fingers of my left hand. In 1940 Dr. Moody sent me to Dr. McGaughey. I think this was in November or December, 1940. At that time, I had those two open sores and had them over a year. Dr. McGaughey administered X-ray treatment and the sore on the second finger of the left hand closed up externally, but not inside. It now has the appearance of scar tissue and there is a little sore there, looks a good deal like an ordinary wart. They have a kind of rough surface, and are brown in color. The one that healed up on the outside was an open sore practically a quarter of an inch long and it hurts underneath now when you press on it, which is true with some of the other spots on my hands. There are a number of these brown spots on the palms of my hands and some of them have been there four or five years. Dr. Moody said they were caused by something that I was handling and the things I was handling was the acid from the batteries and the green stuff that forms on the battery posts, commonly called corrosion.

"When I first went to Moody and he examined the open sores on my fingers, he said it was caused by something I was handling. He knew what kind of work I was doing. I couldn't say that he knew I spilled battery acid on my hands. He did not ask me what I was handling. I do not know what caused those places to come on my hands. The only knowledge I have is what Dr. Moody told me. I am relying on his statement. I knew when I saw Dr. Moody a year and a half ago that I was handling batteries and painting tires and I knew that I would get cuts on my hands on several occasions and that I had gotten this battery water on those cuts. I would not say that I wore the bandages on my finger all the time for a year and a half before I quit working for the company. It was somewhere near that, but the fingers would get better at times and I would take it off. I would sometimes change the bandage during the daytime.

"The finger that is sore now is the same finger that was sore when I went to Dr. Moody a year and a half ago and it has been sore ever since."

The testimony of Dr. Moody was somewhat indefinite as to when he first told the appellant that he believed the warts or keratoses on

his hands and the open sores were caused by something he was handling in his work; that he made no record of what he told him in August, 1940, although he may have told him that when he first saw him. The doctor further stated: "This was the same finger that was affected when he first came to me in August, 1939, and I have treated him all the time since then."

Appellant-claimant assigns as error "that there was not any substantial evidence to support the award of the Commission and the evidence before the Commission was not legally sufficient to sustain the award and because under the evidence as a matter of law the Statute of Limitations does not bar the claim herein."

In determining the issues involved herein, the following well-established rules and propositions of law must be observed: The finding of the Commission is conclusive upon appeal, if supported by sufficient competent evidence, even though the record contains evidence which would support a conclusion contrary to that reached by the Commission, for, if the competent evidence is conflicting, the finding of the facts by the Commission is conclusive upon the court. So, too, it has been held uniformly that the award of the Commission has the force and effect of the verdict of a jury and in the same way becomes the basis for a court judgment. [Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S. W. (2d) 601; Kinder v. Hannibal Car Wheel & Foundry Co. (Mo. App.), 18 S. W. (2d) 91; Probst v. St. Louis Basket & Box Co. (Mo. App.), 52 S. W. (2d) 501.]

"In determining whether the Commission's award was justified by the evidence, on appeal, the court considers only evidence most favorable in support of such award, together with all reasonable inferences which may be drawn therefrom to support the conclusion of the Commission, and disregard any unfavorable testimony where it is contradicted by evidence supporting the conclusion of the Commission. [Jones v. Century Coal Co. (Mo. App.), 46 S. W. (2d) 196; Schulte v. Grand Union Tea & Coffee Co. (Mo. App.), 43 S. W. (2d) 832.]" [Gleason v. Titanium Pigment Co., 93 S. W. (2d) 1039; Lunsford v. St. John's Hospital, 107 S. W. (2d) 163.]

Moreover, the reviewing court cannot consider the weight of the evidence, or the credibility of witnesses on appeals from awards of the Workmen's Compensation Commission. [Jackson v. Curtiss-Wright Airplane Co., 334 Mo. 805, 68 S. W. (2d) 715; Holmes v. K. C. Southern Ry. Co., 228 Mo. App. 672, 66 S. W. (2d) 966.] The weight and value to be given the evidence is exclusively for the Commission to determine and its determination thereof is conclusive upon a reviewing court. [King v. Mark Twain Hotel (Mo. App.) 60 S. W. (2d) 675; Duckworth v. City of Macon (Mo. App.), 63 S. W. (2d) 206; Lunsford v. St. John's Hospital, supra; Lutmen v. American Shoe Mach. Co., 151 S. W. (2d) 701.]

In cases where latent injuries are involved the claim must be filed within six months from the time it becomes reasonably discoverable and apparent that a compensable injury has been sustained. [Wheeler v. Mo. Pacific R. R. Co., 42 S. W. (2d) 579, 328 Mo. 888.]

In Renfro v. Pittsburgh Plate Glass Co., 130 S. W. (2d) 165, l. c. 171, the rule is announced "that an injury is not an accident but the result of an accident; and the Statute of Limitations provided for in the compensation act does not begin to run until it becomes reasonably discoverable and apparent that a compensable injury has been sustained. [Wheeler v. Mo. Pac. R. Co., 328 Mo. 888, 42 S. W. (2d) 579; Kostron v. American Packing Co., 227 Mo. App. 34, 45 S. W. (2d) 871. See also Bridges v. Fruin-Colnon Const. Co. (Mo. App.), 52 S. W. (2d) 582.]" [Leonard v. Fisher Body Co., St. Louis Division of General Motors Corporation, 137 S. W. (2d) 604, l. c. 611.] And the question as to when it becomes reasonably discoverable that employee had sustained a compensable injury is a question of fact to be determined by the Commission. [Lutman v. American Shoe Mach. Co., *supra*.]

Keeping in mind the foregoing rules of law applicable to the facts in the instant case it becomes obvious that the sole question before this court is whether or not, under the undisputed facts in the case, the Commission was justified in finding that this claim was barred by the Statute of Limitations of the compensation act.

Preliminary to the determination of this fact we must ascertain when the injury, if any, occurred which entitled the claimant to compensation. It is apparent from all the evidence that claimant met with an accident or a series of accidents and that injury resulted therefrom which entitles him to compensation if his claim therefor was timely filed. Under the facts in this case the claim should have been filed within six months after it became reasonably discoverable and apparent that an injury resulted from the accident or accidents for which the employee is entitled to compensation, as provided by Section 3727, Revised Statutes Missouri, 1939, Missouri Revised Statutes Annotated, being the Statute of Limitations in effect at that time.

We refer briefly to the testimony upon this particular issue. Appellant's claim was filed February 5, 1941. He testified that about four or five years prior to April 11, 1941, the date of the hearing, brown spots began to appear upon his hands which looked like brown warts; that in the summer or fall of 1939 an open sore developed on the second finger of his left hand and another on the index finger of the same hand; that shortly after the appearance of these sores he went to Dr. Moody for treatment (the date thereof as fixed by Dr. Moody being August 23, 1939). Dr. Moody continued to treat his finger from that date up to the time of the hearing. According to the claimant the doctor told him at the time that the condition of his fingers resulted from something he was handling. He further stated that Dr. Moody knew where he was working and the nature of the

work he was doing. The treatment given by Dr. Moody was an ointment to be applied externally, then taped with a bandage. The sore on the second finger healed over in time, but the one which had developed on the index finger, in August, 1939, continued to be an open sore, continued to be treated by Dr. Moody and was the same sore Dr. Moody decided was malignant in August, 1940. It was the same sore and the only one which appellant had at the time the case was heard. Dr. Moody testified that when he first treated appellant's hands for the open sore, in August, 1939, he prescribed an ointment known as camitol and this treatment was continued until November, 1939, when he changed to Metphen Ointment; that the finger was bandaged a good deal of the time from August, 1939, to August, 1940, and that "this is the same finger that was affected when he first came to me in August, 1939, and I have treated him all the time since then." In August, 1940, being suspicious that the open sore was malignant the doctor started X-ray treatments and the administration of vitamin B.

In view of this testimony can it be said that there is no competent, substantial evidence to support the Commission's finding that the injury was reasonably discoverable and apparent more than six months prior to February 5, 1941, the date the claim was filed? Can it be said that such evidence as heretofore referred to is not legally sufficient or that it is of such a nature as to be lacking in sufficient probative force to sustain the award? We think not. But appellant contends that this claim is saved by virtue of the amendment to the Statute of Limitations extending the time for filing claims to one year after the injury, in lieu of six months, and which became effective October 10, 1941 (Laws of Mo. 1941, p. 718.)

It must be borne in mind that at the time of the injury and at the time of filing the claim the six months Statute of Limitations was in full force and effect. As heretofore intimated there was ample substantial evidence to support the Commission's finding that the injury was reasonably discoverable and apparent more than six months prior to February 5, 1941, the date the claim was filed, and therefore the proceeding was barred by the statute. Obviously, it could not have been a live claim on the effective date (October 10, 1941) of the Amendment to this statute, and, therefore was not affected thereby. [Wentz v. Price Candy Co., 175 S. W. (2d) 852.]

It is our conclusion that the award made by the Commission was proper and that the judgment of the Circuit Court affirming it should be sustained. It is so ordered. *Blair, P. J.,* concurs; *Vandeventer, J.,* not sitting.