EVERETT SEWARD, D/B/A KELLEY SEWARD MOTOR COMPANY, RESPONDENT, v. NORMAN EVRARD, DEFENDANT AND THIRD PARTY PLAINTIFF, AND CROSS TOWN MOTORS, INC., A CORPORATION (THIRD PARTY DEFENDANT), APPELLANT.—222 S. W. 2d 509.

St. Louis Court of Appeals. Opinion filed July 1, 1949.

*Igoe, Carroll, Keefe & Coburn, Richmond C. Coburn* and *A. M. Meyer* for appellant.

896

*Franklin Miller* and *Frank P. Motherway* for respondent.

WOLFE, C.—This was commenced as an action in replevin in which the plaintiff sought recovery against defendant Evrard of a Chevrolet coach. The defendant filed a third party petition and by leave joined Cross Town Motors, Inc., as a third party defendant, alleging that he had purchased the Chevrolet coach from it. The plaintiff amended his petition by adding a count in conversion against the third party defendant and the third party defendant then answered and asserted a counterclaim against the plaintiff. The cause was tried by the court upon an agreed statement of facts and upon a stipulation filed, and resulted in a judgment against the third party defendant from which it has appealed.

The facts agreed upon are substantially as follows:

The plaintiff was engaged in the business of buying and selling second-hand automobiles in the city of St. Joseph, Missouri, under the name of Kelley-Seward Motor Company. On August 15, 1947, he purchased, from the J. F. Newton Motor Company, a second-hand Chevrolet coach, for which he paid, and received a certificate of title assigned to him.

On August 18, 1947, the automobile was taken to the St. Joseph Automobile Auction Company, which was engaged in the business of auctioning second-hand automobiles to dealers in such cars. This firm was also operated by the plaintiff. Plaintiff knew that only dealers registered as such by the states in which they did business were permitted to buy at this auction, but no check was maintained to be sure that all purchasers were such dealers. The only safeguard maintained in this respect was the posting of signs at the place of the auction advising bidders that only registered dealers could participate. At the time the automobile was turned over to the St. Joseph Automobile Auction Company the usual car receipt was filled out although the transaction of delivering the car to the auction company was really one between the plaintiff and himself.

The automobile was auctioned off on August 19 and the highest bidder was a man who represented himself to be Fred S. Stokes, doing business as the Stokes Motor Company, at Little Rock, Arkansas. The plaintiff had never seen nor done business with this man before and made no inquiry at the time as to Stokes' reliability or integrity. The plaintiff did know that Stokes purported to live in Little Rock, Arkansas, and knew that Arkansas was a non-title state, that is, a state which did not require the issuance of a certificate of title for an automobile and the delivery of such certificate contemporaneously with the sale of an automobile. Stokes delivered to the auction company a draft signed "Stokes Motor Company", by himself, for $2300, payable to "Kelley-Seward Motor" and drawn on Stokes Motor Company, payable through the People's National Bank of Little Rock, Arkansas. Stokes also delivered to the auction company a receipt

for the automobile and the auction company delivered possession of the automobile to Stokes.

The plaintiff attached the Missouri certificate of title to the draft and delivered these papers to his bank in St. Joseph, Missouri, to be forwarded to the Arkansas bank for collection. The plaintiff did not endorse this certificate of title, nor did he intend to pass title to the automobile until the draft cleared. He sent the Missouri certificate of title to the Arkansas bank merely to confirm the transaction and to permit the purchaser to easily secure the motor number and any other descriptive material relating to the automobile. It was the plaintiff's intention that when the draft had cleared by payment and the Missouri certificate of title and the money had been returned to him that he would assign the certificate of title and send it to the Stokes Motor Company.

Five or six days later the People's National Bank at Little Rock, Arkansas, wired the plaintiff's bank in St. Joseph that they could not locate the Stokes Motor Company and returned the unpaid draft and the certificate of title. The plaintiff then notified the St. Joseph Police Department and the State Highway Patrol and hired a private detective to locate the car, as well as two other cars which had been sold to Stokes in the same manner. Plaintiff never notified the Director of Revenue of Missouri that he had sold the Chevrolet coach to Stokes and this was not done until the private detective employed by the plaintiff advised public authorities of the transaction.

On August 20, 1947, a certificate of registration on the Chevrolet coach was issued by the state of Arkansas, pursuant to Arkansas law, to the Stokes Motor Company.

On August 22, 1947, a man who represented himself to be R. H. Stokes, doing business as the Stokes Motor Company, in Little Rock, Arkansas, telephoned Earl LaCroix, president of Cross Town Motors, Inc., third party defendant, a dealer in new and second-hand automobiles in the City of St. Louis. LaCroix had never heard of either Stokes or the Stokes Motor Company prior to this telephone call, but Stokes told him that he had three cars for sale, one of them being the car in question. Stokes stated that he was asking $5,600 for the three cars and that if LaCroix was interested in them he could contact Stokes at the Congress Hotel in St. Louis ''in the next twenty minutes'' and further stated that he was staying at the hotel with his sister.

LaCroix at once took one of his salesmen and drove to the Congress Hotel to see Stokes. When they arrived there a man approached them on the street and stated that he was Stokes and led them to a nearby parking lot to look at the three cars and after looking the cars over LaCroix agreed to buy them. They did not enter the Congress Hotel or make any effort to verify Stokes' statement that he was a registered guest there. The three cars were driven from the

lot at the same time to the Cross Town Motors, Inc., where Stokes produced three Arkansas certificates of registration, all of which were in the name of Stokes Motor Company and signed by R. H. Stokes. LaCroix then closed the deal by taking the three cars and the Arkansas certificates of registration from Stokes and paying him a total of $5,600, $2,000 of which was for the Chevrolet in question. The Arkansas certificates were assigned by Stokes to the Cross Town Motors, Inc.

At the time of this transaction neither the Cross Town Motors nor Earl LaCroix had any knowledge that plaintiff claimed any interest in the Chevrolet coach and neither LaCroix nor any other person for the Cross Town Motors made any investigation or inquiry as to Stokes' reliability or integrity.

On August 26, Cross Town Motors, Inc., sold the Chevrolet to defendant Norman Evrard for $2295. Norman Evrard did not know that plaintiff claimed any interest in the automobile and when the sale was made to him both he and the Cross Town Motors, Inc., signed applications for a Missouri certificate of title for the car, which were mailed to the Department of Revenue of the State of Missouri with the Arkansas certificate of registration certifying thereon that the car had been sold on the 22nd day of August, 1947, to Cross Town Motors, Inc. On September 4, 1947, a Missouri certificate of title was issued by the Department of Revenue to Cross Town Motors, Inc., and stamped "canceled" across its face and retained in the records of the Department of Revenue. On the same day a Missouri certificate of title was issued by the department to defendant Evrard and forwarded to him. Approximately a month later this action was instituted against Evrard and plaintiff obtained an order of delivery for the automobile upon posting bond and the automobile was seized pursuant to the order.

In addition to the facts agreed upon a stipulation was filed in which it was agreed that it has been the practice of the Commissioner of Motor Vehicles and of the Director of Revenue of the state of Missouri when a dealer in motor vehicles made application for a Missouri certificate of title supported by a certificate of registration from the state of Arkansas or some other state not requiring certificates of title similar to those required under the Motor Vehicle Act of Missouri, and when such foreign certificate of registration appeared regular on its face and to have been duly assigned to the dealer, to issue a certificate of title to the dealer, and in the event the application of the dealer was accompanied by a further assignment from the dealer to a subsequent vendee to show said certificate issued and canceled and thereupon to issue and mail to the vendee a certificate of title to his address as shown upon his application.

The stipulation contained other agreements which it will not be necessary to set out and upon the agreed facts and stipulation the

court below found in favor of defendant Norman Evrard and against plaintiff Everett Seward; it further found in favor of plaintiff Everett Seward against Cross Town Motors, Inc., third party defendant, and the third party defendant is the appellant here.

Appellant contends first that plaintiff was estopped from asserting his title to the automobile. It is true that he failed to comply with the statutes. Section 8382, R. S. Mo. 1939, Mo. R. S. A., Sec. 8382, provides:

"If such motor vehicle or trailer is sold to a resident of another state or country * * * the owner thereof shall immediately notify the commissioner. * * * It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless, at the time of the delivery thereof, there shall pass between the parties such certificate of ownership with an assignment thereof, as herein provided, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void."

Neither of the above provisions of the statute were followed and under the rulings in the cases of Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S. W. 2d 975, and Peper v. American Exchange National Bank in St. Louis, 357 Mo. 652, 210 S. W. 2d 41, the sale by the plaintiff to Stokes was void.

In both the cited cases the court held that the defendant was not an innocent purchaser without notice of any defect in title because in each case the title was defective upon its face and sufficient to put the defendant upon inquiry. When the Pearl case was retried the defendant attempted to establish estoppel by relating a conversation had with the plaintiff which took place after the loan on the car in question had been made and the court held that this being subsequent to the transaction was insufficient. Pearl v. Interstate Securities Co., Mo. App., 217 S. W. 2d 302.

No act or statement of the plaintiff was relied upon by the Cross Town Motors, Inc., in the case under consideration. The plaintiff failed to assign the certificate as provided by statute and failed to notify the Director of Revenue that the Chevrolet had been sold to a resident of another state, but apparently neither of these omissions on his part misled the third party defendant for the Chevrolet was purchased by Cross Town Motors from Stokes without any check of the Missouri records.

There is, however, under the doctrine of estoppel the rule that where one of two innocent persons must suffer by reason of the acts of a third party the person whose act enabled the third party to bring about the loss must sustain it if the other person acted in good faith and without knowledge of the facts. Goddard Grocer Co. v. Freedman, Mo. App., 127 S. W. 2d 759; Hannibal Inv. Co. v. Schmidt,

Mo. App., 113 S. W. 2d 1048; Edmonson v. Waterston, 342 Mo. 1082, 119 S. W. 2d 318; Hickman v. Dunlop Tire & Rubber Co., 238 Mo. App. 573, 185, S. W. 2d 874; G. I. T. Corp. v. Hume, Mo. App., 48 S. W. 2d 154.

In the case of Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S. W. 2d 977, l. c. 979, the court stated:

"Of course, plaintiff might be estopped from making this claim. Plaintiff said he left the assignments with Security uncompleted as a protection to him pending payment of the check. Defendant's contention is that this made it possible for Security to defraud it and that it is in the position of a bona fide purchaser without notice of any defect in its mortgagor's title, citing Pettus v. Powers, Mo. App., 185 S. W. 2d 872; Anderson v. Arnold-Strong Motor Co., 229 Mo. App. 1170, 88 S. W. 2d 419. The weakness of defendant's position is that defects in the title of its mortgagor were apparent on the face of the title certificates of these cars held by it. These defects at least were sufficient to put defendant upon inquiry to ascertain the true facts, and the true facts would have shown that Security had nothing to mortgage. Defendant may have evidence to show estoppel but it does not appear from plaintiff's own evidence."

We have the converse of that situation here for the Arkansas title was regular on its face; sufficient in fact for the Director of Revenue of the State of Missouri to accept it as valid. There is nothing to indicate that Cross Town Motors did anything unusual in buying the car from a purported dealer and it was under no duty to look beyond the apparently valid title that the dealer presented at the time of the sale. It was therefore a bona fide purchaser without notice of any defect in the title.

The question left for determination is whether the plaintiff's conduct in giving Stokes possession of the Chevrolet in the manner and under the circumstances in which he did was sufficient to estop him from later asserting title against the Cross Town Motors. The doctrine applies where the true owner clothes another with apparent title but the true owner must ordinarily do more than give possession to another before he is estopped. Anthony v. Midwest Live Stock Commission, Mo., 260 S. W. 94. It appears from the agreed facts that the plaintiff knew Stokes as a dealer in used cars; he knew that he operated in Arkansas where he could obtain a title upon application and with this knowledge he accepted Stokes' draft and gave him possession of the automobile. Although knowing Arkansas was a non-title state, plaintiff did nothing to protect himself against the nonpayment of the draft and while he did not intend to pass title until it was paid he carelessly placed Stokes in a position where he could and did secure an Arkansas title regular upon its face. Upon this state of facts it does not appear that he should now be heard to

complain against an honest buyer and the court erred in not holding that the plaintiff was estopped from asserting title.

It was stipulated that should it be held that the third party defendant, Cross Town Motors, Inc., recover upon its counterclaim the damages recoverable should be $100 actual and $100 punitive. It is maintained that the court erred in not finding for the third party defendant against plaintiff on the counterclaim. The claim itself is one for damages to its business and loss of time of its employees and expenses arising out of the transaction. It is alleged that the damages were occasioned by plaintiff's violation of the statute relating to the transfer of motor vehicles. We are cited to no cases which support the theory of the counterclaim and it appears obvious that the proximate cause of the damages to the third party defendant was the act of Stokes and not plaintiff. The court did not err in finding against Cross Town Motors, Inc., on its counterclaim.

It is the recommendation of the Commissioner that the judgment in favor of the plaintiff and against the third party defendant on the third party defendant's counterclaim be affirmed and for the error noted that the judgment in favor of the plaintiff and against the third party defendant on plaintiff's cause of action be reversed.

PER CURIAM:—The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court in favor of the plaintiff and against the third party defendant on the third party defendant's counterclaim is accordingly affirmed, and the judgment in favor of the plaintiff and against the third party defendant on plaintiff's cause of action is accordingly reversed. *Anderson*, P. J. and *Hughes* and *McCullen, JJ*, concur.