George PASHALIAN, (Plaintiff) Appellant,

v.

BIG–4 CHEVROLET COMPANY, Inc., (Defendant) Respondent.

No. 30681.

St. Louis Court of Appeals.

Missouri.

July 18, 1961.

Motion for Rehearing or for Transfer to Supreme Court Denied Sept. 5, 1961.

Samuel J. Goldenhersh, Frank J. Lane, Jr., and Goldenhersh & Goldenhersh, St. Louis, for appellant.

Eugene B. Overhoff, and Overhoff & Hayes, St. Louis, for respondent.

ELGIN T. FULLER, Special Judge.

This case is unique. In the trial there was no witness. There was no written, agreed statement of facts. A jury was waived and the cause tried before the court. The only evidence consisted of statements of facts made by the attorneys for the parties. Some of these statements were made in court and some in chambers. After the brief statements by counsel, most of which had been made by plaintiff's attorney, the court asked what defendant had to offer. At that time defendant's attorney made an oral motion to dismiss the case for failure of plaintiff to state a cause of action against the defendant. This motion was overruled. The court then asked several pertinent questions, the answers to which supplied some of the necessary facts. But even then the trial judge was led to declare, "I think this is a barren record. I don't have any facts here as to the transaction." At that stage of the proceeding the defendant's attorney wisely announced that the parties to the entire transaction were present in court and stated, "Let's put them on the stand and clear up that." The court agreed, and told the attorneys that he thought it was important to determine who was present when the transaction was made and under what circumstances very important exhibits were prepared. After further statements were made, some of which were in answer to questions propounded by the trial judge, and some of which statements were not germane to the issues, the attorney for the defendant announced, "I have no further *exhibits.*" The court then extended another invitation for the defendant to call witnesses, but counsel then suggested that instead of calling the witnesses, he would dictate some facts into the record. This was done. Both parties then rested. The court immediately made his findings in favor of plaintiff and entered judgment in favor of plaintiff and against the defendant for actual damages in the amount of $2,324.70, and for punitive damages in the amount of $500, aggregating $2,824.70. The trial was had and judgment entered June 20, 1960. On the 23rd day of June, 1960, the trial Judge entered this order: "Motion to set aside verdict or for new trial sustained and defendant granted new trial upon point 7 set forth in said Motion." Point 7 of defendant's said motion read as follows: "The verdict and judgment in this cause is improper and is occasioned by the other matters herein mentioned."

Plaintiff appeals from the order granting a new trial to the defendant.

The facts of the case, while not complicated, are highly unusual and do not fit the facts of any adjudicated case which counsel have cited or which we have seen. On or about March 18, 1958, the plaintiff, George E. Pashalian, who is an Armenian immigrant and who speaks, but does not read, English, went to the S. and L. Motors, a used car dealer in St. Louis, to buy a new six-cylinder 1958 Chevrolet Bel Air four-door sedan. He transacted his affairs with one Theodore F. Lesch of the S. & L. Motors. On that day plaintiff paid S. & L. Motors the sum of $35 cash and received an allowance on his used car of

$575. This used car was delivered, and the certificate of title properly assigned to S. & L. Motors. Mr. Lesch then went to the defendant, Big-4 Chevrolet Company, Inc., a new car dealer, of St. Louis, Missouri, and there dealt with Charles Wilson, a salesman for defendant Big-4 Chevrolet Company, and told him that he wanted to buy a car for someone he knew, and asked Wilson to quote a price on the described Chevrolet. The quoted price was agreeable. On or about March 20, 1958, Mr. Lesch returned to the Big-4 Company and gave Mr. Wilson the necessary information concerning the name of the person in whom title papers should be made. Defendant Big-4 Chevrolet then executed a car invoice in the name of plaintiff, George Pashalian, 2901 Renshaw, East St. Louis, Illinois, which was signed and acknowledged before a Notary Public March 20, 1958. Big-4 Chevrolet also prepared the Illinois form for application for Certificate of Title which bears the same date, March 20, 1958. On the same date the Manufacturer's Statement of Origin was signed by defendant Big-4 Chevrolet Company, which was transferred to George Pashalian. The invoice set out the extra equipment such as heater, white wall tires, antifreeze and other items, bringing the total sale price to the amount of $2,225. The exact date of delivery of the new car was not shown in evidence, but presumably defendant Big-4 Chevrolet Company delivered the car to Mr. Lesch of S. & L. Motors on or about March 21, 1958. Mr. Lesch on that date gave a check payable to Big-4 Chevrolet Co. for the full purchase price of $2,225. The check was drawn on the Hampton Bank of St. Louis against the account of Automobile Sales and Listings, Inc., which was another company in which Mr. Lesch had an interest. Mr. Lesch then delivered the car to the plaintiff Pashalian. Mr. Pashalian on that date, March 21, 1958, delivered to Mr. Lesch a cashier's check in the amount of $1,714.70, payable to S. & L. Motors and drawn against the Lindell Trust Company, St. Louis, Mo., which was the balance then due S. & L. Motors for his new Chevrolet automobile. At some later

date the check which Mr. Lesch gave to defendant Big-4 was returned from the bank with the notation "account closed." The invoice, the application for Certificate of Title, the Manufacturer's Statement of Origin, all prepared by defendant Big-4 and mentioned above, together with the usual service policies, were mailed by Big-4 directly to plaintiff Pashalian. The defendant is a new car dealer, and under its franchise with General Motors the defendant was prohibited from selling a new car to a used car dealer. Defendant stated into the record, "Big-4 Chevrolet Company is a new car dealer and by relations with General Motors is not allowed to handle, to sell a new car to a used car dealer, that it must be sold to an 'envelope' purchaser."

Plaintiff had dealt solely with Mr. Theodore Lesch of S. & L. Motors. There was no evidence that Mr. Pashalian even knew of the defendant company. However, after delivery of the new Chevrolet to him by S. & L. Motors and after he had paid the complete purchase price of $2,324.70 to S. & L. Motors, he received through the mail and from the defendant the title papers and service policies. The envelope and the other papers gave the name and address of defendant Big-4 Chevrolet Co. One of the service policies entitled the plaintiff to a 1,000-mile inspection and adjustment. These papers were mailed to the plaintiff no earlier than March 25th because the Manufacturer's Statement of Origin was not acknowledged before the Notary Public until that date. About twenty days after plaintiff first got the car and on April 10th, he took it to the defendant Company for his one-thousand mile checkup. The name and address of defendant company appeared on the service policy which plaintiff had received through the mail. He had not at that time mailed the title papers to the State of Illinois to perfect his title. The title papers and the service policies were still in plaintiff's possession when he went to the defendant company for the purpose of having the one-thousand mile check-up. Some employee or representative

of the defendant company asked the plaintiff if he had the papers on the car and the plaintiff then gave the papers to him. The plaintiff was told to return about 3:30 that afternoon and that his car would be ready. When plaintiff returned at 3:30 for the car he was taken into the office and was told by the defendant that because Mr. Lesch's check to Big-4 had been returned unpaid and marked "account closed," the defendant would not surrender the automobile to the plaintiff nor would it return to him the title papers which he had given to the defendant that morning.

This suit in trover for conversion then followed. The trial court first found the issues for the plaintiff and assessed his actual damages at $2,324.70 (the amount which plaintiff paid to S. & L. Motors for the car) and punitive damages at $500. Later the defendant was granted a new trial.

■ This action being one at law and having been tried before the court without a jury, this court is required to review the entire record as in equitable proceedings and give such judgment as the trial court ought to have given and as to this court seems agreeable to law. Sec. 510.310, subd. 4 RSMo 1949, V.A.M.S.; Supreme Court Rule 73.01(d), V.A.M.R. The appellate court will defer, when proper, to the findings of the trial court. Anderson v. Abernathy, Mo., 339 S.W.2d 817. The deference usually accorded the determination of a factual issue by the trial court because of its better position to judge the credibility of witnesses appearing before it, is not applicable to cases submitted upon depositions and exhibits or only upon statements of facts made by counsel and where no witnesses testify, as in this case. Giokaris v. Kincaid, Mo., 331 S.W.2d 633; Pitts v. Garner, Mo., 321 S.W.2d 509.

The defendant relies on two propositions of law to sustain the trial court's favorable ruling on defendant's motion for a new trial. First, defendant contends that Lesch was the agent of the plaintiff, Pashalian, in obtaining the automobile from the defendant, Big-4 Chevrolet Company, and that plaintiff should be the one to sustain the loss brought about by Mr. Lesch giving a worthless check to the defendant. The second contention of the defendant is that the sale of the automobile was a cash sale and that in such a sale delivery and payment are concurrent, and without payment title does not pass; that because Lesch's check given to the defendant in payment for the automobile was worthless, title was not transferred to the plaintiff Pashalian.

■ The evidence does not sustain the claim that Lesch was the agent of Pashalian. There is never a presumption of agency, and the burden of establishing agency is on the party asserting it and by whom it is alleged to exist. Martin v. Mercantile Trust Company, Mo., 293 S.W.2d 319. "'Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.' Restatement, Agency, § 1." Leidy v. Taliaferro, Mo., 260 S.W.2d 504, loc. cit. 505. If an agency is to be implied from the facts, it must be implied from a natural and reasonable, and not a strained or distorted construction of the facts. E. B. Jones Motor Company v. Pullen, Mo.App., 298 S.W.2d 448; Kaden v. Moon Motor Car Co., Mo. App., 26 S.W.2d 812, loc. cit. 814; Varble v. Stanley, Mo.App., 306 S.W.2d 662.

■ The plaintiff dealt solely with Lesch of S. & L. Motors. He thought that he was buying the automobile from S. & L. Motors. There is no evidence to show that the plaintiff even knew the defendant. Plaintiff paid S. & L. Motors the purchase price of $2,324.70. It is not likely that he would have paid S. & L. Motors had Lesch been acting as his agent. No doubt he would have paid defendant Big-4 had he thought Lesch was acting as his agent in purchasing the automobile. The plaintiff should not be charged with the wrongful act of Lesch when plaintiff had no knowl-

edge of the alleged agent's dealings with defendant Big-4 Company. At no time did plaintiff Pashalian know that he was dealing with anyone other than Lesch and S. & L. Motors. It was not until after he received the title papers and service policies in the mail did he know that the defendant company was in any way interested in the transaction. The facts in the case of Larner-Diener Realty Company et al. v. Fredman et al., Mo., 266 S.W.2d 689, cited by the defendant on the question of agency, are so unlike this case that it does not aid in determining the question here involved. That was an action for specific performance of a contract to sell real and personal property. The defendants, the vendors, counter-claimed for damages on the ground that the plaintiffs were the agents of defendants in the sale, when in fact the plaintiffs had purchased the property for their own benefit through a straw party. The Supreme Court found that the plaintiffs were the agents of the defendant vendors and reversed the decree of the trial court which had ordered specific performance. At page 690 the Court said, "The creation of the relation of principal and agent rests in the intention of the parties which may be express or implied, and need not be a conscious intention, but may be determined from the facts and circumstances of the particular case." No one could question the ruling in that case, for there the facts and circumstances did show the agential relationship between the parties. The facts in the case now before us do not show agency between the plaintiff and S. & L. Motors. While defendant Big-4 Company did learn from Lesch that the ultimate buyer was to be George Pashalian, it did not concern itself with the credit of Mr. Pashalian. It did not know or inquire how Mr. Pashalian was to pay Lesch of S. & L. Motors for the car. That was no concern of the defendant, for the defendant was not transacting any business with plaintiff Pashalian. It seems rather obvious that the only reason the defendant invoiced the plaintiff was because it could not under its franchise with General Motors, sell a new car to a used car dealer. There is nothing in this entire transaction which would justify a finding of agency between plaintiff Pashalian and Lesch or S. & L. Motors.

The second contention of the defendant is that this was a cash sale and since the check issued by Lesch to Big-4 was worthless, title to the automobile did not pass; that in a cash sale, delivery and payment are concurrent, and without payment title does not pass.

The law is well settled that where a sale is made for cash, the transaction is not complete until the purchase price is paid and, until then, no title passes to the purchaser. An exception to that general rule or law is a waiver of a cash payment or estoppel by the seller to claim such payment. One case cited by the defendant, Shearer Motor Co. v. Burmeister, Mo.App., 216 S.W.2d 955, clearly announces the exception. That was a replevin suit to recover possession of an automobile. The plaintiff agreed to sell a new Chevrolet to the defendant for $1,596.94. Under the terms of the sales contract $532.94 was to be paid in cash on delivery, the balance to be secured by a chattel mortgage. Plaintiff's employee, Jack Fuller, handled the transaction. The copy form of the original invoice had slipped while being placed in the typewriter in such manner that the figures $532.94 appeared opposite the word "Deposit". Fuller said to the defendant, "It looks to me as though you have made your deposit and therefore there is no money to be collected." The defendant replied, "Yes, that is right." The application for the transfer of title was prepared by the plaintiff, and afterwards a Certificate of Title was issued in the name of the defendant. Fuller had no authority to deliver a car unless the cash down-payment had been made. About fifteen days after the original sale of the car, the plaintiff seized the car under the replevin suit. The plaintiff claimed that it had the right to possession of the car because of defendant's failure to make the cash payment, and relied on those cases which hold that where

a sale is made for cash, the transaction is not complete until the purchase price is paid and, until then, no title passes to the purchaser unless the seller has waived the cash payment. The court recognized that principle of law, but stated, loc. cit. 958:

"The passing of title in such cases is a matter of intent implied from the terms of the contract. But the conduct of the parties at the time of the sale may manifest an intent contrary to that implied from the terms of sale, and title may have actually passed in a given case even though the payment of the purchase price has not actually been made.

"It is manifest that plaintiff in the present case intended to pass title with the delivery of the car to defendant, and that title was actually transferred. At that time plaintiff delivered to defendant an invoice to the car, assisted defendant in securing a new license for the automobile, secured the execution of a chattel mortgage on the car which could only be valid in the event title passed to defendant and prepared an application for the transfer of the title certificate. Thereafter, a certificate of·title to the car was actually issued to the defendant. The foregoing evidence not only shows an intent to pass title, but also shows that title was actually vested in the defendant at the time this suit was brought."

▇ The wrongful act of Lesch in giving a worthless check to defendant Big-4 caused the loss in this case. The real question is, which of the two parties—defendant Big-4 or plaintiff—should suffer this loss? Big-4 delivered an automobile to Lesch for which it was never paid. Plaintiff Pashalian paid $2,324.70 to Lesch of S. & L. Motors, and since defendant Big-4 has taken the automobile from Pashalian he has nothing in consideration for his payment of $2,-324.70. Under the doctrine of estoppel the old equitable rule is applicable, that where one of two innocent persons must suffer by

reason of the acts of a third party, the person whose act enabled the third party to bring about the loss must sustain it if the other person acted in good faith and without knowledge of the facts, or, stated another way, where one of two innocent parties shall suffer by reason of the fraud of a third person, the one who permits himself to be deceived and thus puts it in the power of such third person to defraud another shall be the loser rather than the latter. The great weight of authority is in accord with this statement of the rule. See 50 Am. Jur. 1015, Sec. 170; Restatement of Contracts, Sec. 477; 38 C.J.S. Guaranty § 32, p. 1172; J. R. Watkins Co. v. Oldfield, 351 Mo. 894, 174 S.W.2d 142.

The facts and principles of the Stephen Burns, Inc. v. Trantham, Mo.App., 305 S. W.2d 66 come nearer the facts in this case than any which we have reviewed. Plaintiff, Stephen Burns, Inc. replevined an automobile from defendant Homer Trantham. The plaintiff was engaged in selling new cars. A man named Townsend bought the car January 27, 1954. He gave a check for the agreed price. He was given a copy of the Retail Buyer's Order and the car was delivered to him. Shortly thereafter he obtained a Certificate of Title from the State of Indiana. Townsend then sold the car to Pagedale Motors, Inc., a used car company in St. Louis, Mo. On February 9, 1954, Trantham bought this car, trading in his 1952 Chevrolet and paying an additional $1,500. He obtained a Missouri Certificate of Title and drove the car until October 9, 1954, at which time it was taken from him by the writ of replevin. Mr. Townsend's check (the check of the original buyer) was returned to the plaintiff, Stephen Burns, Inc. (who was the original seller) marked "insufficient funds." The appellant (plaintiff) claimed that no title passed from Stephen Burns, Inc. to Townsend because the check was returned, and that the subsequent purchaser therefore took no title. At page 70 the opinion stated,

"Having thus vested Townsend with title, the plaintiff is estopped from

claiming that Trantham's title is not good, for it was plaintiff's act that put Townsend in a position to transfer title to the car, and Trantham, an innocent purchaser for value, should not stand the loss. Seward v. Evrard, 240 Mo. App. 893, 222 S.W.2d 509; Jacobson v. M. B. Thomas Auto Sales, Mo.App., 234 S.W.2d 813, and cases cited therein."

In Seward v. Evrard, 240 Mo. App. 893, 222 S.W.2d 509, the plaintiff, Seward, was engaged in buying and selling used cars. He sold the auto in question at an auction, where only registered dealers could buy, to Fred S. Stokes d/b/a Stokes Motor Co. of Little Rock, Arkansas. Plaintiff did not know Stokes, but did know that he purported to live in Arkansas, and that Arkansas was a state which did not require the issuance of a Certificate of Title and the delivery of such contemporaneously with the sale of an automobile. Stokes delivered a draft payable through an Arkansas bank. Plaintiff did not endorse the Certificate but attached it to the draft. He did not intend to pass title until the draft cleared. The automobile was delivered to Stokes. A few days later the draft was returned unpaid. A certificate of registration was issued to Stokes by Arkansas. Two days later Stokes sold the car to Cross Town Motors of St. Louis, which paid $2,000 for the car, and the Arkansas certificate was assigned to Cross Town. Cross Town did not know that the plaintiff claimed any interest in the car. Four days later Cross Town sold the car to Norman Evrard, the defendant, for $2,295. Later the State of Missouri issued and forwarded title to defendant Evrard. The plaintiff (original seller) located the car by detective and police work and brought replevin with bond, and the car was taken under the writ. This court sustained the judgment below in favor of the defendant, saying at page 513 of 222 S.W. 2d:

"There is, however, under the doctrine of estoppel the rule that where one of two innocent persons must suffer by reason of the acts of a third party the person whose act enabled the third party to bring about the loss must sustain it if the other person acted in good faith and without knowledge of the facts. Goddard Grocer Co. v. Freedman, Mo.App. 127 S.W.2d 759; Hannibal Inv. Co. v. Schmidt, Mo.App., 113 S.W.2d 1048; Edmonson v. Waterston, 342 Mo. 1082, 119 S.W.2d 318; Hickman v. Dunlop Tire & Rubber Co., 238 Mo.App. 573, 185 S.W.2d 874; C.I.T. Corp. v. Hume, Mo.App., 48 S. W.2d 154."

Continuing, the opinion reads:

"It appears from the agreed facts that the plaintiff knew Stokes as a dealer in used cars; he knew that he operated in Arkansas where he could obtain a title upon application and with this knowledge he accepted Stokes' draft and gave him possession of the automobile. Although knowing Arkansas was a non-title state, plaintiff did nothing to protect himself against the nonpayment of the draft and while he did not intend to pass title until it was paid he carelessly placed Stokes in a position where he could and did secure an Arkansas title regular upon its face. Upon this state of facts it does not appear that he should now be heard to complain against an honest buyer and the court erred in not holding that the plaintiff was estopped from asserting title."

Hannibal Investment Company v. Schmidt, Mo.App., 113 S.W.2d 1048, while differing in facts, was decided upon the same principle announced in the Stephen Burns, Inc., case, supra, and in the Seward v. Evrard case discussed immediately above. In the Hannibal Investment Co. case the plaintiff's agent delivered a car and the title to a third party to hold until litigation involving an attachment against the plaintiff had been settled. The third person, instead of holding the car, sold it to the defendant. It was held that the plaintiff

could not recover the car, because plaintiff's agent had delivered the car and the indicia of ownership of the car to the third party, giving the third party the power to deal with the car as he pleased. The one giving him that power to perpetrate the fraud by selling it as his own should be the one to sustain the loss.

The defendant Big-4 relies strongly on the case of Hickerson v. Con Frazier Buick Company, Mo.App., 264 S.W.2d 29. In that case the seller of a new automobile took a check from the buyer for the full price of the automobile. The defendant seller executed and delivered to the buyer a bill of sale and the vendor's certificate on the prescribed form for a Missouri Certificate of Title, and gave these with the possession of the automobile to the purchaser. The purchaser mailed the application for title to the Department of Revenue the day following. On that same day the purchaser died. The seller tendered the check to the decedent's administratrix and requested return of the automobile. This was refused and the seller took possession of the automobile. The suit was brought by the administratrix, who claimed the automobile as an asset of the estate. The court held that the suit for conversion brought by the Administratrix would not lie, as the evidence failed to establish that title had passed to the deceased. Payment not having been made, the sale was not complete. The opinion pointed out that acceptance of a check does not constitute absolute payment, saying, "It is well established that where a sale is for cash, payment is not made if a check given in payment is dishonored." This case would be conclusive of the case now under consideration if this case involved only S. & L. Motors and defendant Big-4. When S. & L. Motors (or Lesch or his other company, Automobile Sales and Listings, Inc.) gave a worthless check to defendant Big-4, then the defendant, if the transaction had been by only the two parties, would be entitled to recover possession of the automobile. But as this court said in the Stephen Burns, Inc., case,

supra, in distinguishing that case from the Hickerson v. Con Frazier Buick Company case:

"It will be seen, however, that the facts in Hickerson v. Con Frazier Buick Co., supra, differ from those under consideration, in that no third party was involved, as the administratrix stood in the same position as the deceased, and neither was there any element of estoppel or waiver which appears to be present under the facts before us."

For the same reason, the Hickerson case does not aid the defendant Big-4 Chevrolet Company.

■ As between plaintiff Pashalian and defendant Big-4 Chevrolet Company, the defendant should sustain the loss brought about by the worthless check given by Lesch. The defendant dealt solely with Lesch. It prepared and executed the car invoice, the Illinois form for application for a Certificate of Title, and the Manufacturer's Statement of Origin and mailed these, together with the service policies, to George Pashalian. It quoted to Lesch the sale price that it wanted. It did not know and was not concerned with the amount which Lesch would collect from Pashalian, nor how Pashalian would pay Lesch. It delivered the automobile to Lesch and, as stated, mailed all the necessary title papers to Pashalian. It accepted the check drawn by Lesch for the exact amount it had quoted to Lesch. There is no question but that defendant Big-4 intended at the time that title to this new automobile pass to the Plaintiff. It could not sell the new automobile to Lesch because of its franchise provisions with General Motors Corporation and hence the making of a so-called "envelope" sale through the used car dealer, Lesch or S. & L. Motors. The defendant accepted the check from Lesch and gave him possession of the automobile. It was, at the time, satisfied with Lesch's check, for it did nothing to protect itself against the non-pay-

ment of his check. By delivering the car to Lesch and by mailing the title papers to Pashalian the defendant made it possible for Lesch to deliver the new automobile to plaintiff and to receive the $1,714.70 balance from Pashalian. Pashalian paid Lesch the full purchase price of $2,324.70. Upon this state of facts, it does not appear that the defendant Big-4 Chevrolet Company can, by taking the automobile, throw the loss on plaintiff Pashalian, who is in the position of an innocent and honest purchaser. He did all that was required of him to obtain good title to a new Chevrolet automobile. The defendant placed itself in the position of giving up possession and title to its automobile without taking proper precaution to see that it received full consideration from the guilty third party. Under the pleadings and the evidence the plaintiff is entitled to recover actual damages in the sum of $2,324.70.

 Plaintiff's petition also sought punitive damages for the withholding and conversion of his automobile. The policy of the law of Missouri as to punitive damages is set out in Summers v. Keller, 152 Mo.App. 626, loc. cit. 634, 635, 133 S.W. 1180, loc.cit. 1182:

"The policy of the law which authorizes the assessment of punitive damages in any case rests upon the idea that the wrongdoer deserves some punishment in addition to being required to make restitution, and to justify the award of such damages two things must occur: (1) The act complained of must be wrong and some actual damage result therefrom. (2) The wrongdoer must have known that his act was wrong, and he must have done it intending at the time to inflict injury thereby, or it must have been done under such circumstances that the law will imply the evil intent."

Proof of malice is required as a basis for punitive damages, but it is not necessary that there be proof that the defendant was actuated by personal ill will or spite towards the plaintiff. It is enough if there is evidence of legal malice, which according to the legal definition, is the intentional doing of a wrongful act without just cause or excuse. McNamara. v. St. Louis Transit Co., 182 Mo. 676, 681, 81 S.W. 880, 881, 66 L.R.A. 486; Spitzengel v. Greenlease Motor Car Co., 234 Mo.App. 962, 136 S.W.2d 100; Detmer v. Miller, Mo.App., 220 S.W.2d 739; Lampert v. Judge and Dolph Drug Co., 238 Mo. 409, 141 S.W. 1095, 37 L.R.A.,N.S., 533. An act must have been done either with an intent to inflict an injury or under circumstances that the law will imply an evil intent. It may be implied from reckless disregard of another's rights and interests. Summers v. Keller, 152 Mo.App. 626, 133 S.W. 1180.

 The evidence in this case is sufficient to support a judgment for punitive damages in the sum of five hundred dollars. The defendant knew all the facts and circumstances of the entire transaction. It had no evidence of a debt owed by the plaintiff to it. It had no note, mortgage, or other lien. It had accepted the check of Lesch and had mailed all indicia of title to plaintiff Pashalian. Even if Pashalian had been indebted to the defendant Big-4, the defendant had no right to take and retain the automobile and refuse to surrender possession of it and the title papers to the plaintiff. Defendant knew that Pashalian had brought the automobile to its place of business for a thousand-mile checkup. The plaintiff, thinking that it was necessary to present the title papers and service policies to the defendant in order to obtain the checkup, handed the papers, upon request, to the defendant. The defendant then told plaintiff to return about 3:30 o'clock that afternoon to get his automobile. When the plaintiff returned that afternoon for his car he was asked to come into the office, and there he was told by the defendant that it would not give his car to him and would not deliver his title papers to him. That was the intentional doing of a wrongful act. The defendant knew that there had been no default or wrongdoing on the part of

Pashalian. It intentionally deceived the plaintiff in causing him to surrender the title papers and in telling the plaintiff to return in the afternoon for his automobile. It had no legal claim against Mr. Pashalian. It is unfortunate that the defendant had been badly treated by Lesch of the S. & L. Motors and Automobile Sales and Listings, Inc., in his giving to the defendant a worthless check, but such circumstance did not justify the wrongful detention of plaintiff's automobile by the defendant. A corporation, as well as a private person, is liable for exemplary or punitive damages for the wrongful act of its agents and employees done in the course of their employment, if the wrongful act was done wilfully, wantonly, or maliciously. State ex rel. United Factories v. Hostetter, 344 Mo. 386, 126 S.W.2d 1173; and Beetschen v. Shell Pipe Line Corp., Mo.App., 248 S.W.2d 66, affirmed 363 Mo. 751, 253 S.W.2d 785.

The ruling of the trial court granting a new trial to the defendant is reversed, and the cause is remanded with directions to reinstate the original judgment in favor of the plaintiff for actual damages of $2,324.70, and for punitive damages of $500.

ANDERSON, P. J., and RUDDY, J., concur.

WOLFE, J., not participating.