Allen and Sherry **VAN HOOSER**, **Appellants,**

v.

**Ricky BANKS, et al, Respondents.**

**No. WD 44383.**

Missouri Court of Appeals, Western District.

Oct. 8, 1991.

**26**

James W. Jeans, Kansas City, for appellants.

Nicholas C. Vedros, Kansas City, for respondents.

Before LOWENSTEIN, P.J., and FENNER and HANNA, JJ.

HANNA, Judge.

Appellants/plaintiffs Van Hoosers filed a petition for declaratory judgment and replevin naming the purchaser of their automobile, Ricky Banks and the Department of 'Revenue, as defendants. The Citizens Bank was allowed to intervene. There was an agreement on the relevant facts and the matter was submitted to the court on cross motions for summary judgment. The appeal is from the court's judgment declaring the vehicle as the rightful property of Ricky Banks and recognizing the lien of the Citizens Bank as valid. Affirm.

The Van Hoosers are husband and wife who were co-owners of a 1985 BMW. Both of their names appear on the certificate of title. They delivered their vehicle to Plaza Auto Consignment (Plaza Auto) after being informed that Mr. Banks agreed to purchase it. Plaza Auto requested that the Van Hoosers sign the certificate of title in exchange for Plaza Auto's check to the Van Hoosers in the amount of $11,000.00. It was not a cashiers check. Only the husband signed the certificate of title before delivering the title to Plaza Auto. Mrs. Sherry Van Hooser did not sign. Plaza Auto was to hold the certificate of title until the $11,000 check was honored. At that time, by agreement with Plaza Auto, Mrs. Van Hooser would sign and the transaction would be complete.

The BMW was sold to Mr. Banks prior to the check clearing and he received the certificate of title with Mrs. Van Hoosers forged signature. The check from Plaza Auto to the Van Hoosers was not paid. Mr. Banks obtained financing to purchase the vehicle through respondent Citizens Bank who took a security interest. After the purchase, Mr. Banks made application to the Department of Revenue for title. All parties agree that Mr. Banks and the Citizens Bank transacted their business in good faith without any notice of the improprieties committed by Plaza Auto.

It is the Van Hoosers' position that § 301.210 RSMo (1986) requires that both title-holders sign the certificate of title and that any sale without the signature of one is void. Mrs. Van Hooser withheld her signature to insure payment. The Van Hoosers call for strict application of the statute. See *Horton v. State Farm Fire & Casualty Co.*, 550 S.W.2d 806 (Mo.App. 1977). *State v. 1973 Fleetwood Mobile Home*, 802 S.W.2d 582, 584 (Mo.App.1991).

On the other hand, respondents Mr. Banks and the Citizens Bank contend they purchased the vehicle and loaned money on it in good faith relying on a certificate of title that appeared proper in every respect. It is their position that the Van Hoosers should be estopped from claiming the benefit of § 301.210 because the Van Hoosers' act of delivering possession of the certificate of title and vehicle enabled the fraud to have been committed. See *Pashalian v. Big-4 Chevrolet Co.*, 348 S.W.2d 628, 634 (Mo.App.1961).

Section 301.210 deals with the transfer of title of motor vehicles for which a certificate of ownership has been issued. Section 301.210.4 makes it unlawful for a person to sell a vehicle in this state without the assignment of the certificate of ownership being delivered to the buyer at the same time as the delivery of the motor vehicle. Failure to comply renders the sale fraudu-

lent and void.[1]

Section 301.210 has been described as "absolute, mandatory and both rigidly and technically enforced." *Bordman Invest. Co. v. Peoples Bank of Kansas City*, 320 S.W.2d 72, 78 (Mo.App.1958). When the statute has not been complied with, the sale has been held void and both the seller and buyer declared as guilty of a misdemeanor. *Id. See also Personal Finance Co. of Missouri v. Lewis Investment Co.*, 138 S.W.2d 655, 656 (Mo.App.1940).

The issue then becomes whether under these facts the equitable doctrine of estoppel should be invoked to prevent an owner/seller from taking advantage of the statute with the result that the ownership of the vehicle remains with the good faith purchaser.

█ It is a generally accepted principle of law that when the owner/seller of an automobile clothes another with the apparent ownership or authority to sell the chattel, the seller will be precluded from denying, that he had given such authority as against those who act in good faith on that apparent authority and acquire the property for a consideration. *Wills v. Shepherd*, 241 Mo.App. 102, 231 S.W.2d 843, 847 (1950); *also see* 31 C.J.S. Estoppel § 106 (1964); 7A Am.Jur.2d *Automobiles and Highway Traffic*, §§ 38–43 (1980) and Annotation, *Auto–Title–Document–Ownership Indicia*, 18 A.L.R. 830–848, §§ 6–11 (1951).

In the case of *Seward v. Evrard*, 240 Mo.App. 893, 222 S.W.2d 509 (1949) the plaintiff, was a second-hand automobile dealer who took a vehicle to an auction company that he operated and sold it to the highest bidder, a Fred Stokes, d/b/a Stokes Motor Co. of Little Rock, Arkansas. Seward knew that Arkansas was a non-title state which did not require the issuance of a certificate of title. Stokes delivered his draft payable to Seward drawn on Stokes

Motor Co. through the People's National Bank of Little Rock, Arkansas. Seward delivered the automobile to Stokes, attached the certificate of title to Stokes' draft and delivered the draft and title to his bank to be forwarded to the Arkansas bank for collection. The Arkansas bank returned the certificate of title and the unpaid draft to Seward's bank and advised that they could not locate Stokes Motor Co. In the meantime, Stokes obtained a certificate of registration from Arkansas and sold the vehicle to Cross Town Motors, Inc. of St. Louis, Missouri and delivered a properly executed Arkansas certificate of registration. Cross Town subsequently sold the automobile to defendant, Evrard. Neither Cross Town nor Evrard had any knowledge of Seward's interest in the automobile. Seward filed an action in replevin against Evrard. The court applied the doctrine of equitable estoppel because Seward knew Stokes operated in a non-title state and knowing that fact he gave Stokes possession of the automobile. Seward did nothing to protect himself against nonpayment of the draft. The court stated:

> "... and while he did not intend to pass title until it was paid, he carelessly placed Stokes in a position where he could and did secure an Arkansas title regular upon its face. Upon this state of facts it does not appear that he should now be heard to complain against an honest buyer...." *Id.* 222 S.W.2d at 513, 514.

The court also stated that Cross Town was under no duty to look beyond the apparently valid title the dealer presented at the time of the sale. *Id.* at 513. Seward was not entitled to replevin the automobile from Evrard.

The Big–4 Chevrolet Co., a new car dealer, was the party that allowed itself to be deceived in *Pashalian*, 348 S.W.2d 628 when it delivered a new 1958 Chevrolet Bel Air sedan to one Mr. Lesch who, in turn,

---

1. § 301.210 states in relevant part:

    4. It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless, at the time of delivery thereof, there shall pass between the parties such certificates of ownership with an assignment thereof, as herein provided, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void.

paid Big–4 from a checking account that had been closed. Lesch sold the automobile to Pashalian who paid Lesch. The Big–4 Chevrolet Co. sent the application for title directly to Pashalian along with other papers including notice of a free 1000 mile check-up and inspection. When Pashalian took the car in for his free check-up and inspection, Big–4 would not return it. Pashalian filed suit in replevin.

Big–4 Chevrolet relied on a line of cases that held that a sale for cash is not complete until the purchase price is paid and, until then, no title passes to the purchaser unless the seller has waived the cash payment.

The court defined the "real question" to be which of two parties should suffer the loss and the court applied the equitable doctrine of estoppel "... that where one of two innocent persons must suffer by reason of the acts of a third party, the person whose act enabled the third party ..." or "... the one who permits himself to be deceived and thus puts it in the power of such third person to defraud another shall be the loser rather than the latter." *Id.* at 634. Big–4 had to sustain the loss caused by its buyer's worthless check because it delivered the car and title papers without taking precautions to protect itself.

Among other cases, the Van Hoosers cite *Bordman*, 320 S.W.2d 72 as authority that the estoppel doctrine should not be invoked to preclude their rightful title. In *Bordman* the court refused to invoke the doctrine and found that title had not passed from the seller.

Bordman was a finance company and owner of a motor vehicle that it delivered to Watts, an auto dealer, in order for Watts to sell the vehicle. Watts was instructed not to complete any sale until the mortgage lien, which he executed in favor of Bordman, was satisfied. Bordman kept the title and recorded the chattel mortgage. Watts sold the car to Clauson. Watts could not produce the certificate of title to show to Clauson as proof of his ownership. Clauson never received the title although he requested it repeatedly. In order to purchase the vehicle, Clauson signed a note and chattel mortgage which Watts subsequently sold to the Peoples Bank.

The court found that neither Clauson nor the bank were innocent in the legal sense and, therefore, equity would not prohibit the seller from relying on the provisions of § 301.210. For Clauson to have been an innocent purchaser he must have insisted and received the assigned certificate of title at the time the car was delivered to him. Not having done this he was a violator of the law. The court also noted that Peoples Bank had knowledge that the plaintiff company was financing Watts' purchases and taking back the chattel mortgages. The court would not abate the effectiveness of the statute by allowing a violator of its terms to successfully raise estoppel against the seller. "If the statute is to be obeyed, estoppel should not be used to aid those who are guilty of its violation." *Id.* at 79.

The court also looked at plaintiff Bordman's actions and found that it did everything in its power to protect itself and to prevent the public from being misled. *Id.* Bordman did not allow Watts to have the certificate of title and thereby did not put in his hands the ability to commit a fraud.

The Van Hoosers did not take these precautions but rather supplied Plaza Auto with the opportunity to mislead Mr. Banks.

Under our law a certificate of title, while not conclusive, is the primary indicia of ownership of the vehicle. *Tinger v. Tinger,* 709 S.W.2d 123, 124 (Mo.App. 1986). The certificate of title when delivered to Mr. Banks was on its face correct in every respect and neither Mr. Banks nor Citizens Bank was aware or should have had reason to be concerned that anything was wrong with the title. *Seward,* 222 S.W.2d at 513. The Van Hoosers acted at their peril when they delivered possession of the vehicle together with the primary indicia of ownership to Plaza Auto. By relinquishing possession of the vehicle and the certificate of title, the Van Hoosers clothed Plaza Auto with the authority to commit the fraud and failed to observe the law or follow it. When an innocent party is

the victim of that wrong, then as between the two of them, the one who set the scene should bear the loss. *Stephen Burns, Inc. v. Trantham,* 305 S.W.2d 66, 70 (Mo.App. 1957), also *see Seward,* 222 S.W.2d at 513, 514. Equity should balance the competing interests and under these facts, should intervene and estop the Van Hoosers from taking advantage of the statute.

The judgment of the trial court is affirmed.

All concur.