ROCKWOOD BANK, Appellant,

v.

Kenneth CAMP et al., Respondent,

McAteer RV, Inc., Elda Kaye, Defendants,

The CIT Group/Sales Financing Inc., Respondent.

No. 73471.

Missouri Court of Appeals, Eastern District, Division Three.

Jan. 19, 1999.

Michael H. James, Chesterfield, for appellant.

Henry M. Rieke, St. Louis, for respondent.

LAWRENCE E. MOONEY, Judge.

Appellant, Rockwood Bank ("Rockwood"), filed a petition seeking: in Count I, replevin of a recreational vehicle from Respondents, Kenneth Camp and Virginia Marks ("the Camps"); in Count II, a judgment of the trial court declaring Rockwood to have superior rights in the vehicle over Respondent CIT Group/Sales Financing, Inc. ("CIT") and the Camps; and in Count III, the amount due and owing from McAteer RV, Inc.

("McAteer") and John and Elda Kaye McAteer, the owners of McAteer RV, Inc., personally, on a promissory note executed in relation to the acquisition of the recreational vehicle at issue in this case. The trial court granted an order of replevin, and the sheriff transferred possession of the vehicle from the Camps to Rockwood. The Camps asserted a counterclaim against Rockwood for damages resulting from wrongful deprivation of the recreational vehicle. CIT also counterclaimed against Rockwood Bank asserting two counts: Count I (Mandatory Injunction) and Count II (Unjust Enrichment).[1] A consent judgment was entered between Rockwood and McAteer on Count III of Rockwood's Petition. The trial court entered judgment against Rockwood on both Counts of its petition; in favor of CIT on Count I of its counterclaim; and in favor of the Camps on their counterclaim; and awarded the Camps damages in the amount of $7,500.00. The trial court dismissed Count II of CIT's counterclaim as moot. Rockwood appeals. We reverse and remand.

### FACTS

In October 1994, Rockwood Bank and McAteer RV, Inc., a recreational vehicle dealer in Imperial, Missouri, entered into a floor plan agreement for financing McAteer's inventory. Rockwood extended a $150,000.00 line of credit to McAteer under the floor plan. Pursuant to the floor plan, McAteer would purchase a vehicle for its inventory and provide the certificate of title to Rockwood. Rockwood would retain possession of the certificate of title until McAteer had sold the vehicle and paid Rockwood from the proceeds of the sale of that vehicle. Rockwood filed UCC financing statements with the office of the Recorder of Deeds for Jefferson County and with the Secretary of State of Missouri in connection with the floor plan. These financing statements covered all the inventory of McAteer then owned or thereafter acquired pursuant to the floor plan.

1. Both the Camps and CIT asserted cross-claims sounding primarily in fraud against McAteer RV, Inc., the seller of the recreational vehicle at issue in this case. The Camps obtained a default judgment against McAteer on their cross-claim. With respect to CIT's cross-claim against McAteer, a default judgment was entered on Count I, and Counts II and III were dismissed as moot. This appeal does not concern the claims against McAteer.

Rockwood periodically inspected McAteer's lot to ensure compliance with the floor plan. One such inspection was conducted in early October 1996. At the time of the inspection, the Rockwood representative discovered that three recreational vehicles for which Rockwood held the certificate of title were missing from McAteer's lot. Rockwood had not received payment from McAteer for the vehicles and had not released the certificates of title to these vehicles to McAteer. McAteer informed the Rockwood representative that the vehicles had been sold to consumers. Rockwood did not inform either McAteer or the consumers who purchased the vehicles that it considered the sales to be in violation of Section 301.210(4) RSMo. (1994) [2]. On October 23, 1996, McAteer paid to Rockwood the funds associated with the sale of these vehicles, and Rockwood then provided the certificates of title for the vehicles to McAteer.

On or about November 13, 1996, McAteer applied to borrow funds from Rockwood for the purchase of a 1994 Ford Kountry Star recreational vehicle ("the Kountry Star") to be placed in McAteer's inventory. At the time of the application, McAteer did not have sufficient available credit under the terms of the original floor plan to acquire the Kountry Star. Rather than extend the amount of credit available under the floor plan, Rockwood and McAteer entered into a separate loan transaction in order to allow McAteer to acquire the Kountry Star. This transaction, which closed on November 13, 1996, included the execution of a promissory note for $52,-108.50, a Security Agreement and a Personal Guaranty from the McAteers. Rockwood did not file a UCC financing statement with Jefferson County or the State or Missouri regarding its security interest in the Kountry Star.

In connection with this transaction, McAteer assigned and delivered to Rockwood the original Illinois certificate of title to the Kountry Star that had been assigned to McAteer by the prior owner. In addition, McAteer delivered to Rockwood an original Application for Missouri Title and License listing McAteer as owner and Rockwood as the first lienholder. Rockwood filed neither the Illinois Certificate of Title nor the Application for Missouri Title, but rather retained these documents in its file pending the sale of the Kountry Star by McAteer.

On or about November 21, 1996, the Camps agreed to purchase the Kountry Star from McAteer. As part of the transaction, the Camps offered to trade in a 1989 Winnebago RV. On November 21, 1996, the Camps applied for a loan from CIT, a major financier of recreational vehicles, in the approximate amount of $55,000.00, representing the balance of the purchase price of the Kountry Star. On November 26, 1996, McAteer delivered physical possession of the Kountry Star to the Camps. At the same time, McAteer delivered to the Camps an Application for Missouri Title and License on which the Camps were listed as owners and CIT as first lienholder. On November 27, 1996, CIT approved funding for the loan to the Camps and sometime thereafter issued a check to McAteer for the loan proceeds. In this transaction, McAteer did not assign or deliver the original Illinois certificate of title for the Kountry Star to the Camps or CIT. Neither the Camps nor CIT received an assigned certificate of title to the Kountry Star from McAteer despite attempts by CIT to obtain the documents from McAteer.

In February 1997, Rockwood discovered that McAteer had sold and delivered possession of the Kountry Star to the Camps in November 1996. On February 28, 1997, Rockwood formally notified McAteer of default under the promissory note and demanded payment thereon. On April 10, 1997, Rockwood filed the underlying action seeking replevin of the Kountry Star from the Camps, an order of the trial court declaring CIT's and the Camp's interests in the Kountry Star to be subordinate to that of Rockwood, and an award of damages from McAteer. On April 11, 1997, Rockwood took

---

2. All statutory references hereinafter made are to RSMo.1994, unless otherwise noted.

possession of the Kountry Star from the Camps pursuant to the trial court's order of replevin and retained possession of the Kountry Star pending resolution of the case by the trial court. It was undisputed that as of the date of trial, McAteer had not paid Rockwood the balance of the loan for the Kountry Star.

On April 22, 1997, Rockwood filed the Application for Certificate of Title with the Missouri Department of Revenue. On May 15, 1997, Rockwood obtained a Missouri Certificate of Title for the Kountry Star from the Missouri Department of Revenue listing McAteer as owner and Rockwood as first lienholder.

On June 5, 1997, a consent judgment was entered in favor of Rockwood on Count III of its Petition, which asserted a claim against McAteer and John and Elda Kaye McAteer. On August 27, 1997, Rockwood proceeded to trial against the Camps and CIT. Following a bench trial, the trial court found against Rockwood on the remaining counts of its petition. The trial court entered judgment in favor of CIT on Count I of its counterclaim against Rockwood and dismissed Count II as moot. Further, it ordered Rockwood to return actual physical possession of the Kountry Star to the Camps, to deliver the certificate of title to them and to pay the Camps damages in the amount of $7,500.00 for their loss of use of the Kountry Star during the pendency of this case. The trial court further ordered the State of Missouri Department of Revenue to revise the Missouri Certificate of Title for the Kountry Star to reflect the Camps as the rightful owners of the vehicle. Rockwood timely filed this appeal.

## ANALYSIS

Our review of bench-tried cases is governed by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc.1976). We will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

In its first point of error, Rockwood asserts that the trial court erred in ordering it to return the vehicle to the Camps and assessing damages in favor of the Camps in that the purported sale of the Kountry Star to the Camps was fraudulent and void, because McAteer failed to assign the certificate of title to the Camps and/or CIT as required by Section 301.210(4).

Section 301.210(4) reads:

"It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless, at the time of the delivery thereof, there shall pass between the parties such certificates of ownership with an assignment thereof, as provided in this section, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void."

■ The Camps argue that Section 301.210(4) is inapplicable in this case, because the Kountry Star was not registered in the State of Missouri prior to the sale of the vehicle to the Camps. We disagree. Section 301.210(4) applies to all sales of vehicles in the State of Missouri, even if the seller acquires the car in another state and brings it to Missouri for sale. *Pearson v. Allied Finance Co.,* 366 S.W.2d 6, 8, 9 (Mo.App. E.D. 1963); *Lebcowitz v. Simms,* 300 S.W.2d 827, 829, 830 (Mo.App. E.D.1957). Section 301.210(4) has been applied in cases where vehicles were never registered with any state or were registered in foreign states. *Shaffer v. Federated Mut. Ins. Co.,* 903 S.W.2d 600, 605, 606 (Mo.App. S.D.1995). Clearly, the mandate of Section 301.210(4) applies in this case.

However, the trial court held that Rockwood was equitably estopped from asserting the statute in this case. The trial court found that Rockwood was aware of and acquiesced in McAteer's practice of violating Section 301.210(4) by selling vehicles without contemporaneously assigning the certificate of title thereto. It also found that Rockwood

not only failed to take action to stop McAteer's illegal practices, but in fact made the loan which enabled McAteer to purchase the Kountry Star, with full knowledge of McAteer's illegal actions. Thus, the trial court concluded that given its past practice of acquiescing in McAteer's violations of Section 301.210(4), Rockwood was equitably estopped from asserting that the sale of the Kountry Star to the Camps was void under the statute.

Rockwood argues that the trial court erred in applying the principles of equitable estoppel in this case, because Section 301.210(4) is a police regulation, and thus equitable principles are inapplicable. We disagree. Clearly, the mandates of Section 301.210(4) can be relaxed in the appropriate circumstances. See *Bradley v. K & E Investments, Inc.,* 847 S.W.2d 915 (Mo.App. S.D.1993); *Van Hooser v. Banks,* 816 S.W.2d 25 (Mo.App. W.D.1991) and *Strebler v. Hampton Metro Bank,* 686 S.W.2d 28 (Mo. App. E.D.1984). Thus, the issue is whether the doctrine of equitable estoppel applies in the circumstances of this case.

In general, equitable estoppel is defensive or negative in character; a doctrine "precluding a party by reason of his conduct from asserting a right he otherwise would have had." *Longmier v. Kaufman,* 663 S.W.2d 385, 389 (Mo.App. E.D.1983). Equitable estoppel requires "first, an admission, claim or act inconsistent with a claim afterward asserted and sued upon; second, action by the other party on the faith of such admission, statement or act; and third, injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement or act." *Laciny Bros., Inc. v. Director of Revenue,* 869 S.W.2d 761, 765 (Mo. banc 1994). Again, the trial court found that Rockwood had acquiesced in past practices of McAteer in violation of Section 301.210(4), and thus was equitably estopped from asserting strict compliance with the statute in this case. However, "a person may not set up another's acts or conduct as ground for estoppel, unless that person himself has been misled or deceived by such act or conduct." *Missouri Ins. Guar. Ass'n v. Wal–Mart Stores, Inc.,* 811 S.W.2d 28, 34 (Mo.App. E.D.1991). The party asserting estoppel has the burden of proving each of the elements of estoppel by clear and satisfactory evidence. *Id.* Here, CIT and the Camps failed to prove that they took action in reliance on Rockwood's acts, given the fact that at the time of the sale of the Kountry Star to the Camps, neither CIT nor the Camps were aware of Rockwood's involvement in the transaction, much less its claimed acquiescence in McAteer's past fraudulent acts. Thus, CIT and the Camps have failed to prove one of the essential elements of equitable estoppel, namely their reliance upon the acts of Rockwood.

In *Van Hooser v. Banks, supra,* the equitable doctrine of estoppel is stated as follows:

...where one of two innocent persons must suffer by reason of the acts of a third party, the person whose act enabled the third party...or ...the one who permits himself to be deceived and thus puts it in the power of such third person to defraud another shall be the loser rather than the latter.

In *Van Hooser,* a husband and wife owned a car titled in both of their names. *Id.* at 26. They delivered the car to a used car dealer after being informed that the dealer had found a buyer for the car. *Id.* The dealer provided the couple with a check for the price of the car, and the husband signed the certificate of title and gave it to the dealer. *Id.* The dealer was instructed to hold the certificate of title until the check cleared at which time the wife would also sign it. *Id.* Instead, the dealer sold the car to an innocent purchaser and provided him with the certificate of title on which wife's signature had been forged. *Id.* When the dealer's check did not clear, the couple filed an action in replevin against the purchaser of the car arguing that the sale from the dealer to the purchaser was void for failure to comply with Section 301.210(4). *Id.* The court held that the couple had set the stage for the loss by delivering possession of the vehicle to the

dealer along with the primary indication of ownership, the certificate of title, and thus was estopped from asserting strict compliance with the mandate of Section 301.210. *Id.* at 28.

In a similar case, *Bordman Inv. Co. v. Peoples Bank of Kansas City*, 320 S.W.2d 72, 74 (Mo.App. W.D.1958), a finance company funded a car dealer's purchase of a vehicle, but retained possession of the certificate of title to the vehicle and filed a chattel mortgage with respect to the vehicle. The dealer sold the vehicle to a purchaser, who requested the certificate of title on several occasions, but was told by the dealer that it was not available. *Id.* at 75, 76. In the finance company's replevin action, the court strictly enforced Section 301.210(4) and held that the sale to the purchaser was void. *Id.* at 78. The court held that the finance company should not be estopped from asserting the statute, because the company had done all that needed to be done to protect the public from being injured. *Id.* at 79. The finance company not only filed a chattel mortgage, but also retained possession of the certificate of title to the vehicle so the public would not be misled as to the right of the dealer to sell the car. *Id.*

■ In the case at bar, Rockwood's acts did not set the stage for the loss. Unlike the couple in *Van Hooser*, Rockwood retained the original Illinois Certificate of Title to the Kountry Star in its file pending sale of the vehicle by McAteer. Thus, it did not relinquish the primary indicia of ownership of the vehicle to McAteer thereby enabling McAteer to commit fraud. The case at bar is more closely akin to *Bordman*, in which the finance company retained possession of the certificate of title, and thus was not estopped from strictly enforcing the requirements of Section 301.210(4).

Accordingly, we hold that the trial court erred in applying the doctrine of equitable estoppel in this case. Because there was no contemporaneous assignment of title in the transaction between McAteer and the Camps, the purported sale of the Kountry Star to the Camps was fraudulent and void as mandated by Section 301.210(4).

Rockwood makes several other arguments regarding CIT's entitlement to equitable relief, which we need not address given our holding above.

■ Finally, Rockwood argues that the trial court erred in awarding $7,500 in damages to the Camps, because there was no evidentiary support for such an award. We have held above that due to the effect of Section 301.210(4) in this case, the purported sale of the Kountry Star to the Camps was void *ab initio*. Accordingly, the Camps never obtained an interest in the Kountry Star, and thus are not entitled to damages for the period they were deprived of the use of the Kountry Star during the pendency of this replevin action.

We are mindful that, given the inability of equity to intervene, the results dictated by Section 301.210(4) may be harsh. However, to seek redress for any grievance, petition must be made to the legislature, rather than the courts.

The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

SIMON, P.J. and CRANE, J., concur.