

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| ROCKING H TRUCKING, LLC, and JOHN PAYNE HARRISON IV,     ) | |
| ) | |
| Respondents,   ) | |
| ) | WD76470 |
| v.   ) | |
| ) | OPINION FILED: |
| ) | April 22, 2014 |
| H.B.I.C., LLC, MICHELLE ALDERSON, ) | |
| and DAVID FENTON, D.V.M.,   ) | |
| ) | |
| Appellants.   ) | |

**Appeal from the Circuit Court of Boone County, Missouri**
**The Honorable Jodie C. Asel, Judge**

**Before Division III:** Thomas H. Newton, Presiding Judge, and
Mark D. Pfeiffer and Cynthia L. Martin, Judges

This case illustrates the necessity of a final judgment by the trial court before we may consider a judgment on appeal. In this case, we conclude that there was no such final judgment, and therefore we dismiss this appeal.

## Factual and Procedural Background

Appellant David Fenton ("Fenton") and Respondent John Payne Harrison IV ("Harrison") were both involved in the cattle business. Fenton and Harrison partnered on several cattle transactions and became friends. Fenton owned a trailer used for hauling cattle, and

Harrison owned a truck. Fenton and Harrison decided to pair their respective pieces of equipment in order to save transportation costs on their cattle transactions. Eventually, Harrison and Fenton began hauling cattle for others, and a trucking business ensued.

Harrison purchased additional trucks, tractors, and trailers for hauling cattle with the earnings from the business and with lines of credit that he obtained using the trucking business's assets as collateral. Fenton handled the dispatching for the trucking business. In December of 2008, Rocking H Trucking, LLC ("Rocking H") was formed, and the titles of all the trucks, tractors, and trailers were transferred to Rocking H.

Rocking H developed some adverse issues with state and federal regulatory agencies in 2010. Fenton's daughter, Appellant Michelle Alderson ("Alderson"), who began keeping the books for Rocking H at about this same time, suggested to Harrison that the business could avoid some of the agency scrutiny by changing the name of the business. Coincidentally, Alderson had previously formed an organization called H.B.I.C. (acronym for "Head Bitch In Charge"), LLC, ("HBIC"). Alderson had a bill of sale drafted that transferred all of the trucks, tractors, and trailers owned by Rocking H to HBIC. Harrison signed the bill of sale on behalf of Rocking H, and the titles were transferred to HBIC. All the while, the trucking business operated as usual at the same location that Rocking H previously operated the business and in the same fashion as Rocking H had previously operated. Harrison claimed that he was led to believe that he and Fenton would be the owners of HBIC; in fact, however, Alderson was the sole member of HBIC. Eventually, Harrison learned that he was not a member of HBIC.

In 2011, Harrison and Rocking H filed suit against Alderson, Fenton, and HBIC (collectively, "the defendants") in the Circuit Court of Boone County ("trial court"). Subsequently, a first amended petition was filed against the defendants, alleging four counts:

2

replevin (Count I); damages and accounting (Count II); promissory estoppel (Count III); and fraud (Count IV). Alderson filed a counterclaim alleging that Harrison owed her a portion of an unrelated legal settlement that she had helped him obtain against the provider of a bad cattle vaccine. The parties submitted the case to the trial court via bench trial on November 2, 2012. The bulk of the evidence presented at trial centered on the parties' conflicting understandings of the intended effect of the transfer of assets from Rocking H to HBIC. Harrison's evidence supported his contention that he intended to remain owner of the trucking business and its assets through the differently named entity—HBIC—and had been assured by the defendants that his ownership status in the trucking business would be preserved. In contrast, the defendants' evidence supported Alderson's assertion that Harrison wanted out of the trucking business and intended to give the business and business assets to Alderson.

At the close of evidence, the defendants' counsel requested that the trial court issue findings of fact and conclusions of law with its judgment as provided in Rule 73.01(c). Initially, the trial court's response was that the request was untimely as it was not made before the presentation of evidence; but after the defendants reiterated their request for findings of fact[1] and conclusions of law in a formal document filed with the court (and to which Harrison objected), the trial court issued the following Order on November 6, 2012:

> Defendants have now filed Request for Findings of Fact and Conclusions of Law and plaintiffs have filed objections. Pursuant to Supreme Court Rule 73.01(c) the Court is required to make findings of fact only if a request is "made on the record before the introduction of evidence at trial" which was not done in the trial of this case. Also, under the Rule, the Court may allow the request at a later time. Accordingly, the parties may submit proposed findings of fact and conclusions of

---

[1] We are cognizant of the principle that "even if a request for findings of fact under Rule 73.01 is made, a trial court need not make findings of fact unless the movant clearly and unequivocally specifies the controverted fact issues." *Berlin v. Pickett*, 100 S.W.3d 163, 167 (Mo. App. W.D. 2003). Here, the request specifically asked for findings on each of the factual elements necessary to prove fraud. Thus, the equivocal nature of the trial court's "ruling" on the request is significant.

law along with their proposed judgment forms. The Court may (or may not) include findings/conclusions when judgment is rendered.

Thereafter, the parties submitted legal suggestions and/or proposed forms of judgment. Both the plaintiffs' and the defendants' submissions centered around the fraud allegations.

The trial court issued a written judgment dated February 27, 2013, consisting of four pages of findings and conclusions, deciding the case on a legal theory not pled, raised, or argued by the parties. The judgment expressly found for the plaintiffs on Count I, awarding replevin of the remaining equipment, and on Count II, awarding the plaintiffs damages for equipment that had been destroyed in an accident and for lost income during the time that HBIC held the equipment and ran the business. The stated basis of the judgment was "that the purported transfer of ownership of Plaintiffs' tractors and trailers by Bill of Sale (Defendants' Exhibit A) does not comply with the requirements of 301.210 R.S.Mo. and that pursuant to 301.210.4 R.S.Mo. such a sale is 'fraudulent and void.'"[2] The judgment made no findings or conclusions with respect to plaintiffs' Counts III or IV, nor did it in any way acknowledge these two counts. Finally, the judgment found for Alderson on her counterclaim.[3] This appeal followed.

---

[2] Though we need not reach the merits of the trial court's section 301.210 findings and conclusions, we note that the record is not developed as to the issues contemplated by section 301.210 (which generally requires a seller to endorse and deliver the title of a vehicle to the buyer at the time the buyer takes delivery of the vehicle, rendering the transaction "fraudulent and void" in the absence of such timely title delivery). This is, perhaps, because none of the parties ever raised this issue to the trial court, and instead, the trial court *sua sponte* relied upon this statute as the basis for the purported judgment. For example, the trial court's findings conclude that "the titles were not delivered to the purchaser at the time of delivery of the trucks and trailers." But here, the evidence reflects that the trucking business continued in the same place and in the same fashion as before the vehicle transfers; thus, there was no "delivery" of the vehicles in the traditional sense—there was no handing over of the keys—instead, the trucks continued to be dispatched and used to deliver cattle to the trucking business's customers as they had been before any vehicle transfer to HBIC. Further, though strict compliance with section 301.210 is generally required, other rulings from Missouri's appellate courts have noted, "[c]learly, the mandates of Section 301.210(4) can be relaxed in the appropriate circumstances." *Rockwood Bank v. Camp*, 984 S.W.2d 868, 872 (Mo. App. E.D. 1999). Therefore, it is questionable whether the record below could even support the trial court's reliance upon section 301.210 where the evidence is not developed on issues of "delivery" and exceptions to the rule.

[3] Harrison and Rocking H did not cross-appeal the counterclaim ruling from the trial court's purported judgment.

## Appellate Jurisdiction

Even if the issue is not raised by the parties, this court must determine, in every case, whether it has jurisdiction to decide an appeal. As we have previously explained:

> This court has a duty to determine *sua sponte* whether we have jurisdiction to review an appeal. *West v. Sharp Bonding Agency, Inc.*, 327 S.W.3d 7, 10 n.5 (Mo. App. W.D. 2010). We acquire jurisdiction to review a case upon the trial court's issuance of a "final judgment." § 512.020(5). As a general rule, for the purpose of appeal, a judgment is final if it disposes of all parties and all issues in the case and leaves nothing for future determination. *ABB, Inc. v. Securitas Sec. Servs. USA, Inc.*, 390 S.W.3d 196, 200 (Mo. App. W.D. 2012). If the trial court's judgment is not final, we lack authority to consider the appeal, and it must be dismissed. *Id.*
>
> . . . .
>
> The Missouri Supreme Court has defined the required "judicial unit for an appeal" as: "the final judgment on a claim, and not a ruling on some of several issues arising out of the same transaction or occurrence which does not dispose of the claim." [*Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997).] "It is 'differing,' 'separate,' 'distinct' transactions or occurrences that permit a separately appealable judgment, not differing legal theories or issues presented for recovery on the same claim." *Id.*
>
> . . . .
>
> If a judgment "disposes of fewer than all of the issues *and remedies* as to a single claim, it is not an appealable judgment." *Shelter Mut. Ins. Co. v. Vulgamott*, 96 S.W.3d 96, 106 (Mo. App. W.D. 2003). . . . "[A] judgment that fails to dispose of all remedies asserted as to the same legal rights, leaving some legal rights open for future adjudication, is not a final judgment. . . ." [*ABB, Inc.*, 390 S.W.3d at 202.]

*Gerken v. Mo. Dep't of Soc. Servs.*, 415 S.W.3d 734, 737, 739 (Mo. App. W.D. 2013).

Were this a judgment that did not announce its reasons for finding in favor of certain parties as to the claim and counterclaim before the trial court, it would be simple for us to conclude that the trial court did, in fact, deny the request for findings of fact and conclusions of law, and in such procedural scenario we would be bound to review the judgment under the lens that "all facts are considered on appeal as having been found in accordance with the result

reached, and the trial court's judgment will be affirmed if it is correct on any reasonable theory supported by the evidence." *Weaks v. Rupp*, 966 S.W.2d 387, 392 (Mo. App. W.D. 1998).[4] This, however, is not the form of judgment with which we have been presented.

Instead, the four-page findings of fact and conclusions of law provided by the trial court was provided to the parties *after* a request for findings of fact and conclusions of law had been submitted (albeit untimely); *after* the trial court had noted, in its order "ruling" on the request, that the trial court is vested with the discretion to accept an untimely request for findings of fact and conclusions of law pursuant to Rule 73.01; and *after* the trial court noted in the same order that it *may* include findings of fact and conclusions of law in its judgment in response to the request. Under these circumstances, we are not willing to conclude that this record unequivocally establishes that the trial court denied the request for findings of fact and conclusions of law and merely issued voluntary findings announcing the grounds for its decision. *See Dorman v. Dorman*, 91 S.W.3d 167, 171 (Mo. App. W.D. 2002) (noting the difference between grounds of a decision versus requests for findings of fact). We conclude that the trial court's "findings and conclusions do form a proper basis for assigning error and should be reviewed." *Graves v. Stewart*, 642 S.W.2d 649, 651 (Mo. banc 1982).

Here, as it relates to the plaintiffs' first amended petition, there is one factual "transaction or occurrence" that is in dispute. Within that "single claim," there were numerous "remedies" that were pled, argued, and submitted to the trial court in this bench-tried case. As both parties acknowledged at oral argument, the purported judgment in question "disposes of fewer than all

---

[4] Had this been the trial court's form of judgment, it may well be that substantial evidence could have supported one or more "reasonable theories" (*i.e.*, counts) pled by the plaintiffs below. For example, the trial court noted on the record at trial that, "I find it incredible that someone would just give away the vehicles that are described in Exhibits 5 through 16."

of the issues and remedies as to [the plaintiffs'] single claim."[5]  Accordingly, the purported judgment in this case "fails to dispose of all remedies asserted as to the same legal rights, leaving some legal rights open for future adjudication."  *Gerken*, 415 S.W.3d at 739.  The purported judgment constitutes "a ruling on some of several issues arising out of the same transaction or occurrence which does not dispose of the claim."  *Id.* at 737 (internal quotation omitted).  As such, the purported judgment "is not final, we lack authority to consider the appeal, and it must be dismissed."  *Id.* [6]

**Conclusion**

Because the purported judgment of the trial court dated February 27, 2013, is not a final judgment, we dismiss the present appeal.

_____
Mark D. Pfeiffer, Judge

Thomas H. Newton, Presiding Judge,
and Cynthia L. Martin, Judge, concur.

---

[5] As stated previously, the first amended petition submitted numerous theories of recovery.  Ultimately, however, the trial court's judgment relied upon a legal theory that was not pled, raised, or argued by Harrison or Rocking H.  And, where this court has very recently noted adverse consequences for a party that failed to plead affirmative defenses to the statutory framework of the titling statute relied upon by the trial court, *see Burton v. SS Auto Inc.*, No. WD 76513, 2014 WL 1364955 (Mo. App. W.D. Apr. 8, 2014), it is hardly fair to penalize a party for failing to plead affirmative defenses (or present evidence thereof) to section 301.210 when that section has never been pled, argued, or submitted as a basis for relief to the trial court.  Upon dismissal of this appeal, the trial court will again be vested with jurisdiction to "finally" dispose of the "judicial unit" before it.  There are any number of options at the trial court's disposal as to the form of final judgment, some of which may depend on whether the trial court chooses to clarify its ruling on the untimely request for findings of fact and conclusions of law.  Irrespective of how it chooses to do so, the trial court's charge is to dispose of all the issues and remedies as to each claim before it.

[6] Faced with a similar procedural scenario, the court in *Columbia Mutual Insurance Co. v. Epstein* stated:

[A] decision as to an appellate court's jurisdiction of "one claim" or "a distinct judicial unit" cannot be grounded on a calculus as to the merits of an individual appeal and the efficiency of rendering an appellate opinion in an individual case.  Rather, the decision as to the appellate court's jurisdiction of "one claim" or "a distinct judicial unit" should be predicated on an analysis of the procedural posture of the case, with due regard to the *risk* of burdensome successive appeals flowing from the procedural posture of the case.

200 S.W.3d 547, 552 (Mo. App. E.D. 2006).

7